Jeffrey I. Kohn (JK 3219)
Raquel A. Millman (RM 2133)
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone:     (212) 326-2000
Facsimile:     (212) 326-2061
E-mail:        jkohn@omm.com
               rmillman@omm.com

Attorneys for Defendants
NEP Image Group, LLC,
The Image Group Post, LLC,
NEP Broadcasting LLC,
NEP Supershooters, LP,
and Brendan Kelly

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TSVIKA TAL,<br><br>　　　　　Plaintiff,<br><br>　　-against-<br><br>NEP IMAGE GROUP, LLC,<br>THE IMAGE GROUP, LLC,<br>THE IMAGE GROUP POST, LLC,<br>MTI/THE IMAGE GROUP, INC.,<br>NEP BROADCASTING, LLC,<br>NEP SUPERSHOOTERS, LP and<br>BRENDAN KELLY,<br><br>　　　　　Defendants. | No. 06cv 2824 NRB<br><br>**NOTICE OF REMOVAL**<br>**(28 U.S.C. §§ 1332 and 1441(a))** |

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF NEW YORK AND TO PLAINTIFF AND PLAINTIFF'S

ATTORNEYS OF RECORD:

　　　Pursuant to 28 U.S.C. § 1446(a) as amended by Section 1016 of the Judicial

Improvements and Access to Justice Act, Pub. L. No. 100-702 (Nov. 19, 1988), defendants NEP

Image Group, LLC, The Image Group Post, LLC, NEP Broadcasting LLC, NEP Supershooters,

LP, and Brendan Kelly (hereinafter "NEP")[1] hereby invoke this Court's jurisdiction under the

provisions of 28 U.S.C. §§ 1331 and 1441(a) and states the following grounds for removal:

    1.    On or about March 22, 2006, NEP was put on notice of the existence of a

Summons and Complaint, a true and correct copy of which is attached hereto collectively as

Exhibit A.  The action described in those papers was brought in the Supreme Court of the State

of New York, County of New York, was styled and captioned as *Tsvika Tal, against NEP Image*

*Group, LLC, The Image Group, LLC, The Image Group Post, LLC, MTI/The Image Group, Inc.,*

*NEP Broadcasting, LLC, NEP Supershooters, LP and Brendan Kelly*, and was assigned Index

Number 102152/06.  The action described in the above-referenced papers arises from plaintiff

Tsvika Tal's ("Tal") prior employment with defendants NEP Image Group, LLC, The Image

Group Post, LLC, and MTI/The Image Group, Inc.  None of the defendants have been served.

Only MTI/The Image Group, Inc. has filed an answer.  NEP has not filed an answer or any other

pleading responsive to the Summons and Complaint.

    2.    This suit is a civil action wherein plaintiff seeks damages from the defendants

for alleged discrimination and harassment on the basis of religion, national origin and retaliation

in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.,

42 U.S.C. § 1981, The New York State Human Rights Law, Executive Law, Section 296(1)(a) et

seq., and Section 8-107 of Title 8 of The New York City Charter and Administrative Code.  In

addition, plaintiff has asserted two common law claims including intentional infliction of

emotional distress and assault.  (See Complaint, Ex. A.)

---

[1] Another defendant MTI/The Image Group, Inc. has consented to the removal as referenced in Paragraph 9

## FEDERAL QUESTION ALLEGATIONS

3.      Federal jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1441 because this action could originally have been filed in this Court pursuant to 42 U.S.C. § 2000e et seq. Plaintiff's claims arise from alleged discrimination in violation of Public Law 88-352, Title VII, July 2, 1064, 78 Stat. 253, as amended Title 42, U.S.C.A., §§ 2000e to 2000e-17, which establishes a federal cause of action as the remedy for damages arising out of disputes related to discrimination in the workplace in violation of one's civil rights. 42 U.S.C. § 2000e et seq. Therefore, federal jurisdiction exists under 28 U.S.C. § 1331.

4.      In addition, Plaintiff asserts claims for discrimination and retaliation in the workplace pursuant to 42 U.S.C. § 1981. (See Complaint, Ex. A.) Federal jurisdiction exists over this removed action pursuant to 28 U.S.C. § 1441 because this action could originally have been filed in this Court pursuant to 42 U.S.C. § 1981. Plaintiff claims arise from alleged discrimination and retaliation in the workplace in violation of 42 U.S.C. § 1981, which establishes as a federal cause of action as the remedy for damages arising out of disputes related to equal rights under the law. 42 U.S.C. § 1981. Therefore, federal jurisdiction exists under 28 U.S.C. § 1331.

5.      Although Plaintiff asserts claims for violations of the New York State Human Rights Law, the New York City Charter and Administrative Code, assault and intentional infliction of emotional distress, and these claims are not removable claims or causes of action, Plaintiff's causes of action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and under 42 U.S.C. § 1981, are causes of action within the jurisdiction conferred by 28 U.S.C. § 1331, allowing the entire case to be removed and allowing this Court to

---

of this Notice of Removal and the Declaration of Regina Matejka, Esq., Ex. B. The final defendant The Image Group, LLC is a fictional party as referenced in Paragraph 10 of this Notice of Removal.

determine all issues therein.  28 U.S.C. § 1441(c).

## REMOVAL IS PROPER

6.     This Notice of Removal has been filed within 30 days of notice by NEP of the

Summons and Complaint.  Accordingly, this Notice of Removal is timely filed under 28 U.S.C. §

1446(b).

7.     This action is not one described as non-removable in 28 U.S.C. § 1445.

8.     Concurrent with the filing of this Notice of Removal, NEP is giving written

Notice of Removal to the Supreme Court of the State of New York.

9.     Defendant MTI/The Image Group, Inc. joins NEP in this Notice of Removal

and consents to the removal of this case from the state court in which it was filed to the

appropriate federal district court.  (See Declaration of Regina A. Matejka, dated April 10, 2006

("Matejka Decl."), Ex. B.)

10.     Defendant "The Image Group, LLC" is a fictitious name and was improperly

used as the name of a defendant in this action.  Therefore fictitiously named party "The Image

Group, LLC" cannot consent to the removal of this case from the state court in which it was filed

to the appropriate federal district court because it does not exist as an entity.

## VENUE ALLEGATIONS

11.     Pursuant to 28 U.S.C. §§ 112(b) and 1441(a) and (b), this state court action

which was commenced in the New York State Supreme Court, New York County, may be

removed to this federal district court, being the United States District Court for the Southern

District of New York, which embraces New York County within its jurisdiction.

WHEREFORE, Defendant NEP requests that this action be brought to this Court and that this Court exercise its jurisdiction in the premises.

Dated: New York, New York
       April 11, 2006

                                        Respectfully submitted:

                                        O'MELVENY & MYERS LLP


                                        Jeffrey I. Kohn (JK 3219)
                                        Raquel A. Millman (RM 2133)

                                        7 Times Square
                                        New York, New York  10036

                                        Telephone: (212) 326-2000
                                        Facsimile:  (212) 326-2061
                                        E-mail:    jkohn@omm.com
                                                   rmillman@omm.com

                                        *Attorneys for Defendants*
                                        *NEP Image Group, LLC, The Image Group*
                                        *Post, LLC, NEP Broadcasting LLC, NEP*
                                        *Supershooters, LP, and Brendan Kelly*

To:    Steven Arenson, Esq.
       295 Madison Avenue, Suite 700
       New York, New York 10017
       (212) 490-3600

       *Attorneys for Plaintiff*
       *Tsvika Tal*

5

# EXHIBIT

# A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------X

TSVIKA TAL,                                          Index No.
                                                     Date Purchased:
                        Plaintiff,
                                                     Plaintiff designates New York
                                                     County as the place of trial
        -against-
                                                     The basis of the venue is:
                                                     The situs of the occurrences and events
NEP IMAGE GROUP, LLC,
THE IMAGE GROUP, LLC,
THE IMAGE GROUP POST, LLC,
MTI/THE IMAGE GROUP, INC.,
NEP BROADCASTING, LLC,
NEP SUPERSHOOTERS, LP and                            Plaintiff's address is:
BRENDAN KELLY,                                       2658 Legends Way
                                                     Ellicott City, MD 21042
                        Defendants.
-------------------------------------------------------X

# SUMMONS

To the above named Defendant(s):

   **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint is not served with this summons, to serve a
notice of appearance on the Plaintiff's Attorney(s) within 20 days after service of this summons,
exclusive of the day of service (or within 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated: New York, New York
       February 14, 2006

                                         ARENSON, DITTMAR & KARBAN

                          By:        _____
                                     STEVEN ARENSON
                                     Attorneys for Plaintiff Tsvika Tal
                                     295 Madison Avenue
                                     New York, New York 10017
                                     (212) 490-3600

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------X

TSVIKA TAL,                                             Index No.

               Plaintiff,

                                           **COMPLAINT**

    -against-

NEP IMAGE GROUP LLC,
THE IMAGE GROUP, LLC,
THE IMAGE GROUP POST, LLC,
MTI/THE IMAGE GROUP, INC.,
NEP BROADCASTING, LLC,
NEP SUPERSHOOTERS, LP and
BRENDAN KELLY,

               Defendants.
-------------------------------------------------------X

      Plaintiff Tsvika Tal ("Tsvika"), by and through his attorneys, Arenson, Dittmar &
Karban, as and for his Complaint against Defendants NEP Image Group, LLC, The
Image Group, LLC, The Image Group Post, LLC, MTI/The Image Group, Inc., NEP
Broadcasting, LLC, NEP Supershooters, LP and Brendan Kelly (collectively
"Defendants") respectfully alleges as follows:

### Parties

1. Plaintiff Tsvika Tal was, at all times mentioned, domiciled in the State of New
   York.

2. Defendant NEP Image Group LLC, upon information and belief, was and is a
   corporation duly organized and existing under the laws of the State of New York.

1

3. Defendant The Image Group, LLC, upon information and belief, was and is a corporation duly organized and existing under the laws of the State of New York.

4. Defendant The Image Group Post, LLC, upon information and belief, was and is a corporation duly organized under and existing under the laws of the State of New York.

5. Defendant MTI/The Image Group, Inc. upon information and belief, was and is a corporation duly organized and existing under the laws of the State of New York.

6. Defendant NEP Broadcasting LLC, upon information and belief, was and is a corporation duly organized and existing under the laws of the state of Pennsylvania.

7. Defendant NEP Supershooters LP, upon information and belief, was and is a partnership duly organized under the laws of the State of New York.

8. Defendant Brendan Kelly, upon information and belief, was and is domiciled in the State of New York.

**Factual Background**

9. Plaintiff Tsvika Tal, upon information and belief, began working at Defendants The Image Group, LLC and MTI/The Image Group, Inc. in or around August 1999.

10. Defendants, excluding Defendant Brendan Kelly, are a television production and post-production company that provides editing, graphic and other related services to various television and cable networks.

11. Tsvika's first position was in Defendants' shipping department. After approximately one month in the shipping department, Defendants promoted Tsvika to the position of Tape Operator.

12. About two months after this promotion, Defendants again promoted Tsvika from the position of Tape Operator to the position of Assistant Editor.

13. Throughout his employment with the Defendants, Tsvika's job performance was excellent, as indicated by his promotions. Indeed, clients with whom he worked, and for whom he performed services as an Assistant Editor, praised his work and asked that Tsvika be assigned to work with them on other occassions.

14. After working as an Assistant Editor for some time, and as a reflection of Tsvika's skill and dedication, Tsvika performed the job of a full Editor, while still holding the job tittle of Assistant Editor.

15. In or around the summer of 2002, Tsvika, who is Jewish and was born in Israel, started observing the Jewish Sabbath and the Jewish laws pertaining to eating Kosher food.

16. In order to observe the Jewish Sabbath, Tsvika had to leave work on Friday afternoons during the late fall and winter seasons about two hours prior to the formal end of Defendants' work day, which is 6:00pm.

17. To compensate for these two hours, and to ensure that the work he was assigned was completed, Tsvika began his work day two hours earlier than the formal start-time -- coming in at 7:30 a.m. or 8:00 a.m. as opposed to the usual 9:30 a.m. or 10:00 a.m.-- on those Fridays on which he had to leave early. In addition, Defendants regularly assigned Tsvika to work on two and even three editing

3

sessions simultaneously, which required Tsvika to do the job of two or three employees at once. Tsvika always fulfilled these double and triple assignments with skill and diligence.

18. Beginning in or around the summer of 2002, Defendants created, fostered, condoned and ratified a hostile work environment on the basis of religion, race and national origin in which Tsvika was subjected to disparaging comments about the Jewish People, Jewish laws, his observance of Jewish laws and Israel. Defendants' extreme and outrageous conduct inflicted emotional distress on Tsvika. By way of example only, Defendants subjected Tsvika to the following remarks and incidents:

    (a) Senior Editor Bob Campana, for whom Tsvika served as an assistant, stated: "All of the problems in the world are because of you Jews. Because of you I didn't get a loan at the Bank."

    (b) During an editing session in which Tsvika and Senior Editor Bob Campana were reviewing video footage from a Nazi propaganda film in which Jews were compared to animals, and pictures of observant Jews appeared on the screen next to pictures of rats, Campana said: See, I told you so," and "I don't understand the Jews, they have so much money but if you go to Brooklyn, they're living on top of each other like rats."

    (c) Senior Editor Bob Campana regularly made anti-Jewish remarks to Tsvika, including without limitation, saying: "A Jew will lie to your face," "Jews always want more", "Jews control the banks," and telling a client

4

not to listen to a suggestion Tsvika had made because he is "a fucking Jew

from nowhere."

(d) While working with Campana on a show about the Arab Oil Boycott,

Campana said, in response to a reference in one of the videos to U.S.

support for Israel as a factor in the Arab Oil Boycott, "I knew the Jews

were involved in that.  I should've realized back then when I was paying a

lot for oil that it was the Jews' fault."

(e) Campana ridiculed Tsvika for ordering Kosher food at lunch, telling him,

among other things, that Kosher food is "all a scam for the Rabbis, its all

for the money, it's all so the Rabbis can get paid," Jewish

food "is the most disgusting food I've ever seen," "I can't look at it,"

telling him "you're supposed to be my assistant and now you're making

me order from a different [Kosher] place [for you]."

(f) Assitant Editor Mark Phillips told Tsvika, as Tsvika was having a

conversation with a fellow employee about the Middle East: "You people

think that you are the center of the world."  Phillips made other anti-

Jewish and anti-Israel comments to Tsvika, including, without limitation,

"Jews control the media" and "Israel is not really a

democracy."

19. At all times, Senior Editor Bob Campana and Assistant Editor Mark Phillips were

acting within the scope of their employment.

20. At all relevant times, Defendants participated in, empowered, approved of,

condoned and ratified these acts and statements.

5

21. In or around August, 2003, Defendants transferred Tsvika to Image Editorial, another section within the Defendants' company. While working at Image Editorial, Defendants continued to subject Tsvika to a hostile work environment on the basis of his religion, race and national origin and to engage in extreme and outrageous conduct that inflicted emotional distress upon him. By way of example only, Defendants subjected Tsvika to the following remarks and incidents at Image Editoral:

    (a) Kim Cafro, Tsvika's supervisor at Image Editorial, regularly expressed her disatisfaction with Tsvika's religiously based need to leave work early on late-fall and winter Fridays, by, among other things, typically responding to Tsvika's reminders that he had to leave early on Friday with an annoyed "Again!!?"

    (b) After Tsvika had put in a full-day's work, Supervisor Cafro demanded that he stay until 2:00 a.m. to complete a session. When Tsvika told her he was unable to do so because he had a prior committment and that he already had completed the required eight-hour work day, Cafro responded: "You have to stay because we let you leave early on Fridays." Despite his prior commitment, Tsvika worked an additional two to three hours that day, leaving work between 8:00 p.m. and 9:00 p.m.

    (c) Steve Hoppi, an Editor at Image Editorial, made numerous anti-Jewish comments to Tsvika, including, without limitation, saying "Tsvika has to go home to his Jew day" as he was getting ready to leave work on a Friday for the Sabbath and saying that "Tsvika probably wouldn't like him if he

6

wasn't Jewish" in response to Tsvika's comment that he liked an individual that both he and Hoppi knew.

(d) Rob Browning, an Assistant Editor at Image Editorial, also made numerous anti-Jewish remarks, including, without limitation, saying to Tsvika: "You keep Kosher, I thought you were smarter than that," "You're not ordering meat again because you keep Kosher?" and "I'll put pork [which is not Kosher] in your lunch when you are not looking." Referring to Tsvika leaving early on a Friday, Browning said: "Tsvika has to go home and turn off his lights," " I know that you are going out to bars on Friday nights, I'm going to expose you." Upon hearing that Tsvika got engaged and that his fiance is Jewish, Browning said: "I knew it. That's the problem with the world--people like you marry only their own kind."

22. At all relevant times Supervisor Kim Cafro, Editor Steve Hoppi and Assistant Editor Rob Browning acted within the scope of their employment.

23. At all relevant times, Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified these acts and statements.

24. As a result of the above-outlined harrassment and conduct, Tsvika complained to Michael Buckner, the General Manager of the Image Group. Tsvika told Buckner about the negative responses from Defenadants' employees and managers to his observance of Jewish laws.

25. Despite this complaint, neither Buckner nor Defendants did anything to address -- let alone end -- the hostile work environment and infliction of emotional distress.

7

26. Indeed, even after Tsvika's complaint to General Manager Buckner, which was made on or around October 30, 2003, Defendants continued to harass Tsvika on the basis of his religion, race and national origin and to inflict emotional distress upon him.

27. On or around December 5, 2003, which was a Friday, Tsvika checked his work schedule for the following Monday prior to leaving work and saw that he was scheduled to begin work at 1:00 p.m. on the following Monday. On Monday morning, Tsvika called into work to check his messages and was infromed that, contrary to the schedule that had been posted on Friday, he had been scheduled for a session at 10:00 a.m.

28. At 6:00 p.m. on Monday, December 8, 2003, General Manager Buckner informed Tsvika that he [Buckner] had been advised by Brendan Kelly, an Editor for the Image Group, that Tsvika was "late" that morning. Buckner then handed Tsvika a document stating that he was late on that day and certain previous days and demanded that Tsvika sign it so that Tsvika "would not be surprised" when Buckner "fires" him.

29. Tsvika refused to sign the document, explained the change in scheduling, showed Buckner a copy of the originally-posted schedule and told him that no one attempted to contact him [Tsvika] either by telephone or e-mail about the change of schedule.

30. Buckner admitted that the scheduling group had made a mistake, but said that Tsvika should have called that schedule on Friday evening to check the schedule. Tsvika then informed Buckner that, as an observant Jew, he could not use the

8

telephone on Friday evenings after sundown.  Buckner then responded that <u>the</u> <u>core of the problem was due to Tsvika's religion.</u>

31. The next day, on December 9, 2003, Tsvika spoke with Brendan Kelly to clarify any misunderstanding about the prior day and to explain the circumstances surrounding the schedule change.  Kelly exploded at Tsvika, saying: "Who the fuck do you think you are, confronting me? Get the hell out of here, Jack; get out!"  Kelly then told Tsvika that his leaving early on Friday was to blame for the situation.  Kelly then approached Tsvika, coming very close to him with his body and threatened Tsvika with physical violence, shouting: "You don't know who you are dealing with! You don't know what I can do to you! You are messing with the wrong guy."

32. Tsvika asked Kelly if he was threatening him and Kelly said "Yes, I am threatening you."  Tsvika feared for his physical safety and believed that Kelly would strike him.  Shortly thereafter, Kelly told Tsvika "I'll get you, you prick." Later that day, Tsvika complained to General Manager Buckner about Kelly's comments, threats and assault against him.

33. As a direct result of Tsvika's complaints about the harassment, hostile work environment, extreme and outrageous conduct and assault, Defendants retaliated against Tsvika by demoting him from an Assistant Editor position to a Tape Operator position.

34. Defendants transferred Tsvika to another facility where he had to clean tape machines and do other jobs that he had not done since 1999, when he was promoted from the position of Tape Operator to Assistant Editor.

9

35. Defendants' retaliation against Tsvika, which continued and intensified Defendants' pattern of discriminatory conduct , as well as Defendants' pattern of extreme and outrageous conduct, was perpetrated by, among others, William Sheey, who was and is, upon information and belief, the President of Defendant The Image Group, LLC, Defendant MIT/The Image Group, Inc. and Defendant The Image Group Post, LLC. President Sheey mocked Tsvika, when Tsvika complained to him directly on December 15, 2003 about his demotion and harassed him by personally asking him for doctor's notes to explain his [Tsvika's] absense due to bronchitis.

36. On January 20, 2004, Tsvika handed in a list of grievances describing multiple acts of harassment and abuse. When Tsvika brought this list of grievances to President Sheey's attention, President Sheey retaliated against him by threatening him with a lawsuit. Moreover, Defendants did nothing to investigate the list of grievances Tsvika handed in.

37. One month after submitting the list, Defendants still had failed to question Tsvika about his complaints and the list of grievances or to advise Tsvika of any investigation into the complaints.

38. During the week of February 23, 2004, Tsvika met with another officer of the Defendants in an attempt to address, among other things, his demotion. This officer also retaliated against Tsvika, threatening him not to pursue this matter.

39. All of the above-outlined conduct made working for the Defendants unbearable for Tsvika and on March 3, 2004 Tsvika was constructively terminated. The hostile work environment on the basis of religion, race and national origin was

continuing in nature through Tsvika's last day of work, March 3, 2004. Even after his termination Defendants continued to retaliate against and harass Tsvika by attempting to deny him unemployment benefits.

**First Cause of Action:**
**Discrimination and Harassment**
**On the Basis of Religion In Violation of**
**Title VII of the Civil Rights Act of**
**1964, As Amended, 42 U.S.C. § 2000e et seq.**

40. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 39 of this Complaint, as if fully set forth herein.

41. As set forth more fully above, Defendants harassed and discriminated against Plaintiff Tsvika Tal on the basis of his religion (Jewish).

42. As set forth more fully above, Defendants subjected Plaintiff Tsvika Tal to a hostile work environment on the basis of his religion.

43. The religious discrimination and harassment suffered by Plaintiff Tsvika Tal was continuing and intentional in nature.

44. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the religious harassment and discrimination suffered by Plaintiff Tsvika Tal.

45. Defendants' religious harassment and discrimination against Plaintiff Tsvika Tal resulted in his constructive termination.

46. As a result, Plaintiff Tsvika Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

11

47. Plaintiff Tsvika Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

48. Because Defendants acted with malice or reckless indifference to Plaintiff Tsvika Tal's federally protected rights, he is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

**Second Cause of Action:**
**Discrimination and Harassment**
**On The Basis of National Origin (Israeli)**
**In Violation of Title VII of the Civil Rights Act of 1964,**
**As Amended, 42 U.S.C. § 2000e et seq.**

49. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 48 of this Complaint, as if fully set forth herein.

50. As set forth more fully above, Defendants discriminated against and harassed Plaintiff Tsvika Tal on the basis of his national origin (Israeli).

51. As set forth more fully above, Defendants subjected Plaintiff Tsvika Tal to a hostile work environment on the basis of his national origin (Israeli).

52. The national origin discrimination and harassment suffered by Plaintiff Tsvika Tal was continuing and intentional in nature.

53. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the national origin harassment suffered by Plaintiff Tsvika Tal.

54. Defendants' national origin discrimination and harassment against Plaintiff Tsvika Tal resulted in his constructive termination.

12

55. As a result, Plaintiff Tsvika Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

56. Plaintiff Tsvika Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

57. Because Defendants acted with malice or reckless indifference to Plaintiff Tsvika Tal's federally protected rights, Plaintiff Tal is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

### Third Cause of Action
### Retaliation in Violation of Title VII of the Civil Rights Act of 1964, As Amended, 42 U.S.C. § 2000e et seq.

58. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 57 of this Complaint, as if fully set forth herein.

59. As set forth more fully above, Defendants retaliated against Plaintiff Tsvika Tal for his protected complaints of discrimination and harassment. Defendants denied Plaintiff Tsvika Tal tangible job benefits, including demoting him, and subjected Plaintiff Tsvika Tal to additional harassment, threats of termination and constructive termination.

60. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the retaliation perpetrated against Plaintiff Tal.

61. Defendants' retaliation against Tal resulted in his constructive termination.

62. As a result, Plaintiff Tsvika Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

63. Plaintiff Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, mental anguish, and other non-pecuniary losses, in the maximum amount permitted by law.

64. Because Defendants acted with malice or reckless indifference to Plaintiff Tsvika Tal's federally protected rights, Plaintiff Tal is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

### Fourth Cause of Action:
### Discrimination On The Basis Of Race (Jewish) in Violation
### of 42 U.S.C. § 1981

65. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 64 of this Complaint, as if fully set forth herein.

66. As set forth more fully above, Defendants discriminated against and harassed Plaintiff Tal on the basis of his race (Jewish).

67. As set forth more fully above, Defendants subjected Plaintiff Tal to a hostile work environment on the basis of his race (Jewish).

68. The racial discrimination and harassment suffered by Plaintiff Tal was continuing and intentional in nature.

69. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the racial discrimination and harassment suffered by Plaintiff Tsvika Tal.

14

70. Defendants' racial discrimination and harassment against Plaintiff Tsvika Tal resulted in his constructive termination.

71. As a result, Plaintiff Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

72. Plaintiff Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

73. Because Defendants acted with malice or reckless indifference to Plaintiff Tsvika Tal's federally protected rights, Plaintiff Tal is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

### Fifth Cause of Action:
### Discrimination On The Basis Of National Origin (Israeli)
### in Violation of 42 U.S.C. § 1981

74. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 73 of this Complaint, as if fully set forth herein.

75. As set forth more fully above, Defendants discriminated against and harassed Plaintiff Tsvika Tal  on the basis of his national origin (Israeli).

76. As set forth more fully above, Defendants subjected Plaintiff Tal to a hostile work environment on the basis of his national origin (Israeli).

77. The national origin discrimination and harassment suffered by Plaintiff Tal was continuing and intentional in nature.

78. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the national origin discrimination and harassment suffered by Plaintiff Tsvika Tal.

79. Defendants' national origin discrimination and harassment against Plaintiff Tsvika Tal resulted in his constructive termination.

80. As a result, Plaintiff Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

81. Plaintiff Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses in the maximum amount permitted by the law.

82. Because Defendants acted with malice or reckless indifference to Plaintiff Tsvika Tal's federally protected rights, Plaintiff Tal is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

## Sixth Cause of Action
### Retaliation in Violation of 42 U.S.C. § 1981

83. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 82 of this Complaint, as if fully set forth herein.

84. As set forth more fully above, Defendants retaliated against Plaintiff Tal for his protected complaints of discrimination and harassment. Defendants denied Plaintiff Tal tangible job benefits, including demoting him, and subjected Plaintiff Tal to additional harassment, threats of termination and construction termination.

16

85. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the retaliation perpetrated against Plaintiff Tsvika Tal.

86. Defendants' retaliation against Tal resulted in his constructive termination.

87. As a result, Plaintiff Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

88. Plaintiff Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, mental anguish, and other non-pecuniary losses, in the maximum amount permitted by law.

89. Because Defendants acted with malice or reckless indifference to Plaintiff Tal's federally protected rights, Plaintiff Tal is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

**Seventh Cause of Action – Discrimination and Harassment
On The Basis of Religion (Jewish)
In Violation of The New York State Human Rights Law,
Executive Law, Section 296(1)(a) et seq; Aiding, Abetting and Inciting**

90. Plaintiff Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 89 of this Complaint, as if fully set forth herein.

91. Defendants subjected Plaintiff Tal to discrimination and harassment on the basis of religion (Jewish).

92. Defendants subjected Tal to a hostile work environment on the basis of religion (Jewish).

93. The discrimination and harassment on the basis of religion (Jewish) suffered by Plaintiff Tsvika Tal was continuing and intentional in nature.

94. Defendants NEP Broadcasting LLC, NEP Supershooters LP and Brendan Kelly aided, abetted, incited, compelled and/or coerced unlawful practices, including harassment and discrimination on the basis of race against Plaintiff Tal and/or attempted to so.

95. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the discrimination and harassment on the basis of race suffered by Plaintiff Tsvika Tal.

96. Defendants' harassment on the basis of race and discrimination against Plaintiff Tsvika Tal resulted in his constructive termination.

97. As a result, Plaintiff Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

98. Plaintiff Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, mental anguish, and other non-pecuniary losses, in the maximum amount permitted by law.

**Eighth Cause of Action**
**National Origin Discrimination (Israeli)**
**In Violation of The New York State Human Rights Law,**
**Executive Law, Section 296; Aiding, Abetting and Inciting**

99. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 98 of this Complaint, as if fully set forth herein.

100. Defendants subjected Plaintiff Tal to discrimination and harassment on the basis of his national origin (Israeli).

101. The discrimination and harassment on the basis of national origin (Israeli) suffered by Plaintiff Tsvika Tal was continuing and intentional in nature.

18

102. Defendant NEP Broadcasting LLC, NEP Supershooters LP and Brendan Kelly aided, abetted, incited, compelled and/or coerced unlawful practices, including national origin discrimination and harassment against Plaintiff Tal and/or attempted to so.

103. Defendants' national origin discrimination and harassment against Tal resulted in his constructive termination.

104. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the national origin discrimination and harassment suffered by Plaintiff Tsvika Tal.

105. As a result, Plaintiff Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

106. Plaintiff Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, mental anguish, and other non-pecuniary losses, in the maximum amount permitted by law.

### Ninth Cause of Action – Retaliation in Violation of The New York State Human Rights Law Executive Law, Section 296(7)

107. Plaintiff Tsvika repeats and re-alleges each and every allegation set forth in paragraphs 1 through 106 of this Complaint, as if fully set forth herein.

108. As set forth more fully above, Defendants retaliated against Plaintiff Tsvika Tal for his protected complaints of discrimination and harassment. Defendants denied Plaintiff Tal tangible job benefits, including demoting him, and subjected

19

Plaintiff Tal to additional harassment, threats of termination and construction termination.

109.  Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the retaliation perpetrated against Plaintiff Tsvika Tal.

110.  Defendants' retaliation against Plaintiff Tal resulted in his constructive termination.

111.  As a result, Plaintiff Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

112.  Plaintiff Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, mental anguish, and other non-pecuniary losses, in the maximum amount permitted by law.

**Tenth Cause of Action -- Discrimination and Harassment
On The Basis of Religion (Jewish)
In Violation of Section 8-107 of Title 8 of
The New York City Charter and Administrative Code;
Aiding, Abetting and Inciting**

113.  Plaintiff Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 112 of this Complaint, as if fully set forth herein.

114.  Defendants subjected Plaintiff Tal to discrimination and harassment on the basis of religion (Jewish).

115.  Defendants subjected Plaintiff Tsvika Tal to a hostile work environment on the basis of religion (Jewish).

116.  The discrimination and harassment on the basis of religion perpetrated against Plaintiff Tsvika Tal was continuing and intentional nature.

20

117.  Defendant NEP Broadcasting LLC, NEP Supershooters LP and Brendan Kelly aided, abetted, incited, compelled and/or coerced unlawful practices, including discrimination and harassment on the basis of religion against Plaintiff Tal and/or attempted to so.

118.  Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the discrimination and harassment on the basis of religion suffered by Plaintiff Tsvika Tal.

119.  Defendants' harassment and discrimination on the basis of religion against Plaintiff Tsvika Tal resulted in his constructive termination.

120.  As a result, Plaintiff Tsvika Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

121.  Plaintiff Tsvika Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, mental anguish, and other non-pecuniary losses, in the maximum amount permitted by law.

122.  Because Defendants conduct was intentional and malicious, Plaintiff Tal is entitled to punitive damages in the maximum amount permitted by law.

### Eleventh Cause of Action -- Discrimination and Harassment
### On The Basis of National Origin (Israeli)
### In Violation of Section 8-107 of Title 8 of
### The New York City Charter and Administrative Code;
### Aiding, Abetting and Inciting

123.  Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 122 of this Complaint, as if fully set forth herein.

124. Defendants subjected Plaintiff Tal to discrimination and harassment on the basis of his national origin (Israeli).

125. Defendants subjected Plaintiff Tal to a hostile work environment and the basis of national origin (Israeli).

126. The discrimination and harassment on the basis of national origin perpetrated against Plaintiff Tsvika Tal was continuing and intentional in nature.

127. Defendant NEP Broadcasting LLC, NEP Supershooters LP and Brendan Kelly aided, abetted, incited, compelled and/or coerced unlawful practices, including national origin discrimination and harassment against Plaintiff Tal and/or attempted to so.

128. Defendants' national origin discrimination and harassment against Plaintiff Tal resulted in his constructive termination.

129. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the national origin discrimination and harassment suffered by Plaintiff Tsvika Tal.

130. As a result, Plaintiff Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

131. Plaintiff Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, mental anguish, and other non-pecuniary losses, in the maximum amount permitted by law.

132. Because Defendants conduct was intentional and malicious, Plaintiff Tal is entitled to punitive damages in the maximum amount permitted by law.

22

**Twelfth Cause of Action -- Retaliation in Violation of
Section 8-107 of Title 8 of The New York City
Charter and Administrative Code; Aiding, Abetting and Inciting**

133. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth in paragraphs 1 through 132 of this Complaint, as if fully set forth herein.

134. As set forth more fully above, Defendants retaliated against Plaintiff Tal for his protected complaints of discrimination and harassment. Defendants denied Plaintiff Tal tangible job benefits, including demoting him, and subjected Plaintiff Tal to additional harassment, threats of termination and construction termination.

135. Defendants participated in, aided, abetted, incited, empowered, approved of, condoned and ratified the retaliation perpetrated against Plaintiff Tsvika Tal.

136. Defendants' retaliation against Tal resulted in his constructive termination.

137. As a result, Plaintiff Tal has suffered loss of earnings, including but not limited to back pay and front pay, with attendant benefits, plus interest.

138. Plaintiff Tal is also entitled to compensatory damages for, inter alia, physical personal injury, physical pain and suffering, emotional distress, suffering, mental anguish, and other non-pecuniary losses, in the maximum amount permitted by law.

139. Because Defendants conduct was intentional and malicious, Plaintiff Tal is entitled to punitive damages in the maximum amount permitted by law.

**Thirteenth Cause of Action: Assault**

140. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth above, up to and including paragraph 139, as if set forth fully herein.

23

141. As set forth more fully above, on or about December 9, 2003, Brendan Kelly while acting within the scope of his employment, placed Plaintiff Tsvika Tal in apprehension of imminent bodily harm. Tsvika Tal feared Kelly would physically attack him and feared for his safety.

142. All of the above actions were willful, intentional and unwarranted, without any provocation or cause.

143. Defendants NEP Image Group, LLC, The Image Group, LLC, The Image Group Post, LLC, MTI/The Image Group, Inc., NEP Broadcasting, LLC and NEP Supershooters, LP, ratified, condoned, empowered and participated in all of the above-described actions.

144. As a result of the foregoing unlawful acts, Plaintiff Tsvika Tal has suffered and continues to suffer extensive physical, mental and emotional injuries, embarrassment and humiliation and has incurred and will continue to incur medical expenses and other expenses.

145. As a result of Defendants' assault, Plaintiff Tsvika Tal seeks compensatory damages in the maximum amount permitted by law.

146. As a result of Defendants' assault, Plaintiff Tsvika Tal seeks punitive damages in the maximum amount permitted by law.

### Fourteenth Cause of Action: Intentional Infliction of Emotional Distress

147. Plaintiff Tsvika Tal repeats and re-alleges each and every allegation set forth above, up to and including paragraph 146, as if set forth fully herein.

24

148. By virtue of the above described acts and statements, Defendants intentionally inflicted emotional distress on Plaintiff Tsvika Tal.

149. Defendants' extreme and outrageous acts and statements to and about Plaintiff have caused, and continue to cause, Plaintiff physical pain, emotional distress, mental anguish and economic harm.

150. As a result of Defendants' intentional infliction of emotional distress, Plaintiff seeks compensatory damages in the maximum amount permitted by law.

151. As a result of Defendants' malicious and intentional infliction of emotional distress, Plaintiff seeks punitive damages in the maximum amount permitted by law.

## Jury Demand

152. Plaintiff Tsvika Tal requests a jury trial on all issues of fact and damages arising herein.

## Prayer for Relief

WHEREFORE, Plaintiff Tsvika Tal prays that Defendants NEP Image Group, LLC, The Image Group, LLC, The Image Group Post, LLC, MTI/The Image Group, Inc., NEP Broadcasting, LLC, NEP Supershooters, LP and Brendan Kelly appear and answer herein and that Plaintiff have the following relief:

1. A declaration and judgment that Plaintiff Tsvika Tal was unlawfully discriminated against, retaliated against and subjected to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq., 42 U.S.C. 1981, The New York State Human Rights

25

Law, Executive Law, Section 296(1)(a) et seq and Section 8-107 of Title 8 of the New York City Charter and Administrative Code;

2.     An injunction enjoining Defendants from continuing to engage in discrimination, retaliation and harassment in their employment practices;

3.     An award of back pay, front pay, with attendant benefits, for the damages Plaintiff has suffered by way of Defendants' discriminatory and retaliatory practices;

4.     An award of compensatory damages to Plaintiff for economic and pecuniary losses, emotional distress, physical personal injury, physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, embarrassment and other non-pecuniary losses for Defendants' violations of law in the maximum amount permitted by law;

5.     An award of punitive damages to Plaintiff in an amount to be determined by the jury in the maximum amount permitted by law;

6.     An award of attorney's fees and costs;

7.     Prejudgment and post judgment interest at the appropriate legal rate; and

8.     Such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: New York, New York          Respectfully submitted,
       February 14, 2006            ARENSON, DITTMAR & KARBAN


                                    By: Steven Arenson (SA - 9118)
                                    Attorneys for Plaintiffs
                                    295 Madison Avenue, Suite 700
                                    New York, New York 10017
                                    (212) 490-3600

26

# EXHIBIT

# B

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

TSVIKA TAL,

               Plaintiffs

     v.

NEP IMAGE GROUP, LLC,
THE IMAGE GROUP, LLC,
THE IMAGE GROUP POST, LLC,
MTI/THE IMAGE GROUP, INC.,
NEP BROADCASTING, LLC,
NEP SUPERSHOOTERS, LP and
BRENDAN KELLY,

               Defendants.

Case No. _____

## CONSENT TO REMOVAL

      MTI/The Image Group, Inc., by counsel,  hereby consents to removal, pursuant to 28

U.S.C. §1331, §1441 *et. seq.*, and §1446, to the United States District Court for the Southern

District of New York,  by defendants NEP Image Group, LLC, The Image Group Post, LLC,

NEP Broadcasting, LLC, NEP Supershooters, LP, and Brendan Kelly, of an action captioned

TSVIKA TAL, v.  NEP IMAGE GROUP, LLC, THE IMAGE GROUP, LLC, THE IMAGE

GROUP POST, LLC,  MTI/THE IMAGE GROUP, INC., NEP BROADCASTING, LLC, NEP

SUPERSHOOTERS, LP and BRENDAN KELLY,  Index No. 06/102152, Supreme Court, New

York County, to the extent that doing so is not inconsistent with and does not waive any defense,

including without limitation any defense based on lack of personal jurisdiction and/or lack of

service of process or statute of limitations.  MTI/The Image Group, Inc. expressly reserves and

does not waive any and all defenses including without limitation, those based on lack of

personal jurisdiction, improper service of process and statute of limitations.

Dated:  April 10, 2006                                  Respectfully submitted,

                                                        REGINA A. MATEJKA, ESQ.
                                                        1122 Franklin Avenue, Suite 406
                                                        Garden City, NY 11530
                                                        (516) 536-1411


                                                        By:_____
                                                            Regina A. Matejka (RM 3441)
                                                            Attorney for MTI/The Image Group, Inc.